Kenneth E. WILSON (Tem Trol Corporation), Relator,

v.

COMMISSIONER OF REVENUE, Respondent.

No. C4–92–203.

Supreme Court of Minnesota.

Dec. 18, 1992.

John M. Mulligan, Mulligan & Bjornnes, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Barry R. Greller, Sp. Asst. Atty. Gen., St. Paul, for respondent.

GARDEBRING, Justice.

Relator Kenneth Wilson was assessed personal liability for unpaid sales tax owed by Tem Trol Corporation (Tem Trol), for the period March 1983 through April 1985. Wilson was president and principal shareholder of Tem Trol from 1973 until it dissolved on May 6, 1985. The assessment was based on an audit by the Department of Revenue in May 1985, at which time the auditor concluded that Tem Trol should be assessed on an accrual, rather than a cash method basis. The assessment represented the differential between sales tax due under the accrual basis and those due under the cash basis, as of May 1985. Relator appealed the assessment to the tax court and that court ruled in favor of the Commissioner of Revenue (Commissioner). Relator appeals that decision.

Tem Trol, a Minnesota corporation, was a franchised wholesale distributor of Trane heating and air conditioning equipment. In June 1983, Wilson, in his capacity as president of Tem Trol, applied to the Commissioner's office for permission for Tem Trol to report its sales tax liability under the cash method. The request was made because of the delay that often occurred in collecting accounts receivable. In a letter dated July 11, 1983, the Commissioner approved the change from an accrual method to a cash method retroactive to June 1, 1983, contingent on the condition that the change would not make a future audit more difficult. From June 1, 1983 until April 30, 1985, Tem Trol reported its sales tax liability on a cash basis.

Tem Trol often lacked sufficient capital to operate efficiently. Consequently, because it was unable to obtain financing through less costly, more traditional channels, Tem Trol was forced to rely for credit on a financing company, Norwest Business Credit, Inc. (NBCI). Tem Trol received financing from NBCI by assigning its accounts receivable as collateral in exchange for loans in the amount of 85% of the face value of the receivable. When the account was collected, NBCI would credit Tem Trol's account with the remaining 15% of the value of the receivable. Interest was due on the amount loaned and if the account was not collected within 120 days, it was charged back to Tem Trol.

Tem Trol used outside services to perform most of its day-to-day accounting operations, making daily reports to them and receiving back several monthly reports, including a cash receipts journal. A private accounting firm conducted an audit of Tem Trol that encompassed all of 1983 and up to October 1984. The audit certified that the methods of accounting employed by Tem Trol were in accord with generally accepted accounting principles and that they accurately portrayed the financial condition of the company. However, the audit made no conclusions regarding liability for sales tax under the accrual method, nor was any footnote appended to the opinion that related to sales tax.

In late April 1985, Trane refused to continue to finance Tem Trol's inventory. On April 30, 1985, Tem Trol dismissed its employees and ceased doing business. On the following Friday, May 3, Tem Trol filed for bankruptcy protection under Chapter 11 of the Federal Bankruptcy Code. Over the weekend, the company attempted to construct a plan that would allow it to stay in business. However, NBCI, Tem Trol's chief source of credit, indicated that no more money would be forthcoming. On May 6, 1985, as a result of NBCI's position, Tem Trol petitioned the bankruptcy court to convert the Chapter 11 filing to a proceeding under Chapter 7. Subsequently, NBCI took possession of Tem Trol's cash receipts and a substantial portion of its business records.

After Tem Trol closed its doors and dismissed its employees, it filed a final "out of business" sales tax return that showed a negative amount due. Upon receipt of this return, an auditor from the Department of Revenue performed an audit and conducted a post-audit meeting with Wilson on June 3 and 4.

Because the audit was conducted approximately a month after Tem Trol closed, the

applicable records were in disarray. Although many of the records relevant to the audit were kept on a computer which was on Tem Trol's premises, neither the auditor nor Wilson had the requisite knowledge to access any of these records. Additionally, by the time the audit was conducted, NBCI had already removed many of the physical records. Although Wilson was aware that a cash receipts journal was on the premises at the time of the audit, he did not provide it to the auditor to show that Tem Trol had been paying sales tax due the state under the cash method of accounting, nor was the journal produced at the time of the hearing before the Tax Court. Moreover, Wilson recognized that the tax reports he supplied to the auditor showed payment of sales tax under the accrual method.

In his audit report to the Commissioner, based on the information made available to him, the auditor stated that Tem Trol was reporting its sales tax liability on a deferred accrual basis instead of a cash basis. His report recommended Tem Trol be assessed on an accrual basis. As a result of this change in reporting status, an assessment was made by the Commissioner's office, for the period starting in May 1983 and ending April 1985, in the amount of $63,152.12: $51,645.20 in unpaid sales tax, $1,831.88 in penalties, and $9,675.04 in interest.

This amount represents the sales tax due on items for which Tem Trol never received payment, but for which the company received loans from NBCI. After the conclusion of the hearing in the tax court, the parties agreed that a certain portion of the accounts receivable held by NBCI was never collected. Consequently, the parties agreed that the sales tax on this uncollected sum amounted to $20,000. The liability was then reduced by the Commissioner so that the remaining sales tax liability at issue on appeal is $31,645.20.

The issue before this court is whether, under the circumstances, Tem Trol was properly assessed sales tax liability under the accrual method of accounting. Wilson does not dispute that he was president of Tem Trol, the controlling person of the corporation and the supervising officer of the company. In effect, Wilson appears to have conceded that he falls within the definition of one who is personally liable for sales tax not paid by a business.[1]

The main thrust of his argument against imposition of sales tax liability is that because of Tem Trol's status as a cash method taxpayer, the sales tax at issue should have been paid by the entity that collected the accounts receivable: NBCI. In other words, relator argues that Tem Trol's status as a cash method taxpayer, coupled with the bankruptcy, and the removal of certain of the physical records from the premises by third parties cut off his responsibility for the unpaid sales tax due the state on the accounts receivable collected by NBCI.

This assertion flies in the face of the record which clearly shows that all that was necessary to show that Tem Trol was a cash basis taxpayer as to its sales tax liability was a cash receipts journal and that this cash receipts journal was present at the time of the inquiry.

The law at the time of the audit stated:

Every person liable for any tax imposed by this chapter, [including sales taxes] or for the collection thereof, shall keep such records, * * * make such returns, and comply with such regulations, as the commissioner may from time to time prescribe. * * * The commissioner shall further have power to require the attendance of any persons having knowledge or information in the premises, [and] *to compel the production of books, papers, records, or memoranda* by persons so required to attend * * *.

Minn.Stat. § 297A.27, subd. 3 (1984) (repealed 1990) (emphasis added). Further, controlling sales and use tax regulations at

---

1. "A person who, * * * has the control of, supervision of, or responsibility for filing returns or reports, paying taxes, or collecting or withholding and remitting taxes and who fails to do so, * * * is liable for the payment of taxes, penalties, and interest arising under chapters * * * 297A * * *."

Minn.Stat. § 270.101, subd. 1 (1990).

the time of the audit required that every seller

> keep adequate and complete records * * *. These records must include the normal books of account ordinarily maintained by the average prudent businessman engaged in the activity in question * * *.

Minn.R. 8130.7500, subp. 6 (1985).

This statute and rule make clear that Tem Trol had a duty to keep and produce records necessary to its collection and payment of sales tax. This, Tem Trol failed to do. Tem Trol should not be released from the duty to produce proper records without a greater showing that the production of the pertinent records was not possible. In effect, Wilson is attempting to argue that because the audit took place at a time when the records were very disorganized, the state should ignore the fact that no records were produced to show that the sales tax was paid on a cash basis, but rather should take the word of a private auditor who testified he had personal knowledge that Tem Trol's accounting procedures were adequate to meet state standards for the payment of sales tax under the cash method.

This argument misses the point. Tem Trol was assessed on an accrual basis not because adequate records were not *maintained,* but because adequate documentation was not *produced* at the time of the audit. No records have ever been produced that would show that Tem Trol was a cash basis taxpayer. In its memorandum opinion, the tax court stated this succinctly:

> The parties dispute whether proper records were kept to permit an audit of Tem Trol's liability under the cash method of accounting. Again, it is unnecessary to

decide this since on audit the [relator] failed to produce the records, nor were they presented in court. It does little good to maintain records if they are not presented to the auditor upon request at an audit.

Further, it is important to note that Tem Trol received only provisional permission when it sought authorization to pay its sales tax under the cash method. Throughout the period covered by the audit, Tem Trol paid income tax on an accrual basis. Under the rules then in effect, Minn.R. 8130.1800, subp. 1,[2] retailers were presumed to pay sales tax on the same basis they paid income tax. Under this regulation, if a business requested a change that, if implemented, would necessitate different accounting methods for reporting income tax and sales tax, the Commissioner would only grant approval if the change would not impair a subsequent audit. In a letter dated July 11, 1985, the department approved Tem Trol's switch from accrual to cash basis "contingent upon the fact that the change will not make difficult a future audit of your accounting records."

It is apparent, however, that the change to cash basis accounting for sales tax liability made the audit extremely problematic, because no records demonstrating a cash method were provided.

Wilson cites no cases to support its argument that failure to produce accounting records which were on the premises at the time of an audit may later be excused after the audit. Instead, he argues that NBCI should be held liable for the sales tax because it collected the money from the accounts receivable that would have allowed

---

2. **Gross receipts.** The sales tax is imposed upon the gross receipts from sales at retail. "Gross receipts" are herein defined as the total amount received in money or otherwise for all sales at retail * * * as measured by the sales price.
> The person filing the return may report his gross receipts either:
> A. on the cash basis as the consideration is received; or
> B. on the accrual basis as sales are made.
> An election will be deemed to have been made to report gross receipts under the method of accounting on the basis of which the

person filing the return regularly computes his income for tax purposes, unless he can demonstrate to the commissioner that a method of accounting for gross receipts subject to the sales tax (which differs from the method of accounting employed by him for other purposes) will not prevent or make *difficult* an orderly and systematic audit of his records by the commissioner. An application shall be made to the commissioner for permission to change the method of reporting.
Minn.R. 8130.1800, subp. 1 (1985).

Tem Trol to pay its sales tax. Consequently, the argument goes, under the cash method of accounting, because Tem Trol never received the purchase price from the sale of the goods, its liability for the sales tax never arose; in other words, without payment, there was no taxable event. The problem with this argument is that in order for it to be persuasive, Tem Trol would have to be found to have paid its sales tax under the cash method of accounting. We agree with the tax court that even though records may once have existed to show that Tem Trol was a cash basis taxpayer for sales tax purposes, it did not produce these records at the audit or in court and consequently, must be assessed on an accrual basis. Thus, we do not reach the question of whether a cash basis taxpayer would be liable for unpaid sales tax in a situation like this one.

We affirm the decision of the tax court imposing personal liability on Kenneth E. Wilson for unpaid sales taxes in the amount of $31,645.20.